IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY SCHLEGEL, | ) | |
| | ) | |
| Plaintiff, | ) | 2:05-cv-1429 |
| v. | ) | |
| | ) | |
| RENA LYNN KOTESKI, School DIrector, individually and in her official capacity, JEFFREY MATTHEWS, School Director, individually and in his official capacity, SUSAN CALDWELL, School Director, in her official capacity, GARY HORNER, School Director, individually and in his official capacity, BARBARA KRAUSE, School Director, in her official capacity, SCOTT KOLAR, School Director, in his official capacity, DAN LIOY, School Director, in his official capacity, TOM MCGOUGH, School Director, in his official capacity, PAUL OLIJAR School Director, in his official capacity, PLUM BOROUGH SCHOOL DISTRICT, TODD MINK, former School Director, in his official capacity; JAN SCHOENENBERGER, former School Director, individually, and DIANA TRESCO, former School Director, individually, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

**<u>MEMORANDUM ORDER</u>**

Before the Court for consideration and disposition is DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Document No. 15). The motion has been thoroughly briefed (Document Nos. 16, 22, 27) and the parties have thoroughly developed their respective positions relating to the concise statement of material facts (Document Nos. 17, 23, 28). The matter is ripe for disposition.

Factual and Procedural Background

This Section 1983 case involves a decision made by the School Board of Plum Borough School District to reduce the compensation to be earned by Plaintiff Harry Schlegel, in his elected office as Real Estate Tax Collector.  Plaintiff has been politically active in the local community of Plum for many years.  He has held several elective offices and has had various disputes with the named defendants over the years.  Schlegel contends that Defendants reduced his compensation in retaliation for his protected speech.

Schlegel was first appointed to the position as the Real Estate Tax Collector in February, 2000 and was elected to a four-year term in November 2001, to run from January 2002-2006.  By law, 72 P.S. § 5511.36a, the School Board must adopt a resolution changing the compensation of the Real Estate Tax Collector position prior to February 15 of the year of the municipal election. The School Board's resolution dated November 30, 2004 set forth the compensation to be earned by the Real Estate Tax Collector to be elected in November 2005 for the four-year term from January 2006 - January 2010.  Schlegel ran for and was reelected to another four-year term in November 2005.

From 1997 to 2000, Schegel's predecessor in the Real Estate Tax Collector position, Matt Churilla, earned between $105,000 and $119,000 annually.  In 2001, the School Board adopted a resolution setting the compensation for the position for the term January 2002-2006.  In Plaintiff's Exhibit 23, Schlegel states that from 2000-2001 he earned $90,156.69; from 2001-2002 he earned $84,822.00; from  2002-2003 he earned $70,393.00; and from 2003-2004 he earned $70,333.00.  Schlegel projects that under the terms of the November 2004 resolution, he will earn approximately $45,000 per year from 2006-2010.  It is clear that the compensation for

the position has been dramatically reduced. Schlegel was also not given office space and photocopier privileges enjoyed by Churilla.

Schlegel has not presented any direct evidence of retaliation.[1] Instead, he points to the following incidents of protected behavior, which he contends provoked the School Board to reduce his compensation: he displayed a handbill on the shelf in his office that listed how Defendants voted on tax increases; he advocated for the School Board to waive the per capita tax for military members on active duty and when the Board refused, Schlegel paid the tax himself; he displayed a petition to permit referenda on the ability of a school board to raise property taxes; he removed a tattered flag at the high school; and he criticized decisions regarding renovations, building projects and the visitors' field house. Schlegel also complained about his compensation and duties, and made numerous requests to meet with the School Board to discuss these issues.

On October 13, 2005, Plaintiff filed a complaint in the instant matter. The defendants are numerous current and former members of the Plum School Board, as well as the School District itself. Many of the defendants are named in both their individual and official capacities. In Plaintiff's Brief in Opposition to Summary Judgment, he acknowledged that claims against board members in their official capacity are equivalent to claims brought directly against the School District.

On October 28, 2005, Plaintiff filed a First Amended Complaint, asserting two counts.

---

[1] Schlegel cites to a statement from Diana Tresco to the effect that "we will give you nothing, you will get nothing." (citing Schlegel Dep. at 90). In context, though, this statement related only to the question of whether the School District, as opposed to Schlegel, would purchase the computers and other physical equipment needed to set up and operate the office. Further, this statement was made in approximately May 2000, long before the applicable limitations period.

Count One is denominated "First Amendment" and asserts that the "repeated diminution of plaintiff's salary and benefits was carried out to punish his expressions on matters of public concern." Count Two is captioned "Retaliation for Exercise of Constitutional Rights" and, somewhat duplicatively, asserts that "Defendants have reduced his salary and benefits for unlawful reasons, namely in retaliation for his exercise of his First Amendment rights to speak about matters of public concern." The relief sought is back salary and back benefits, compensatory damages for reputational harm, punitive damages and attorney's fees. The parties appear to agree that Plaintiff is presenting a single theory – First Amendment Retaliation, under Section 1983, 42 U.S.C. § 1983. The parties further agree that a two-year statute of limitations applies.

## Standard of Review

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id*. (*citing Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

Discussion

The elements of a First Amendment retaliation claim are: (1) that Plaintiff engaged in protected activity;.[2] (2) that Defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights;[3] and (3) that there was a causal connection between the protected activity and the retaliatory action. *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003)  A defendant may defeat a retaliation claim by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity.[4] *Lauren v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007). The Court first addresses the claims of immunity.[5]

---

[2]The Court does not reach the question of whether the Board's action was motivated by Schlegel's speech on matters of public concern.

[3]The Court will assume, arguendo, that the drastic reduction in compensation would sufficiently deter a person from exercising his or her First Amendment rights.

[4]The Court does not reach Defendants' argument that they would have set the same compensation for the tax collector, regardless of Schlegel's activities, due to their survey of "nearby vicinities."

[5]Plaintiff contends that because the School Board sets his compensation, he is most akin to a "public employee," and therefore the test in *Pickering v. Board of Education*, 391 U.S. 563 (1968), applies. Defendant argues that because Schlegel is independently elected, he is more like an independent contractor, and therefore the test in *Board of County Commissioners v. Umbehr*, 518 U.S. 668 (1996), applies. Under both *Pickering* and *Umbehr*, persons have a right to be free from retaliation for the exercise of First Amendment rights, which must be balanced against the government's legitimate interests. The distinction is whether the government's interests as an

1.      Legislative Immunity of Individual Defendants

Defendants contend that they are entitled to legislative immunity or, in the alternative, qualified immunity.  The Court concludes that the Individual Defendants are entitled to legislative immunity.  Accordingly, their motion for summary judgment will be granted.

The opinion by the Court of Appeals for the Third Circuit in *Baraka v. McGreevey*, 481 F.3d 187 (3d Cir. 2007), is on-point and constitutes mandatory precedent.  The facts in *Baraka* are analogous to the instant case.  The plaintiff was appointed as "poet laureate of New Jersey" which included an honorarium of $10,000.  Baraka engaged in clear First Amendment activity by presenting a poem about the September 11, 2001 terrorist attack.  There was an outcry that the poem was anti-Semitic.  Defendant, the governor of New Jersey, asked Baraka to resign, but he refused.  Governor McGreevey then instructed defendant Harrington, the chair of the New Jersey State Council for the Arts, to withhold the honorarium and defendants commenced a concerted campaign to abolish the position of poet laureate.  Baraka filed a First Amendment Retaliation claim.

The district court granted the defendants' motion to dismiss the case.  The Court of Appeals affirmed, explaining that the defendants' actions "are properly characterized as legislative and are entitled to immunity."  *Id.* at 195.  The Court explained that "legislative" immunity protects not only legislators, "but also public officials outside of the legislative branch when they perform legislative functions."  *Id.* at 196.

The Court engaged in a thorough discussion of the test for determining whether an action is "legislative" in nature.  More importantly, as relevant to this case, the Court applied the test to

---

employer, or as a contractor, will be evaluated.  The Court need not resolve this issue.


a situation in which officials targeted a single identifiable individual in retaliation for his speech:

> In the context of public employment, we have drawn a distinction between the elimination of a position and the termination of an individual employee. *See id.* at 775 ("[T]he elimination of a public employment position-as opposed to the firing of a single individual-constitutes a 'legislative' act."); *Montgomery County*, 215 F.3d at 377 (holding decision to terminate director of county department of housing services was administrative because "[f]iring a particular employee is a personnel decision that does not involve general policy making").

*Id.* at 199-200. Stated simply, firing a particular employee is a personnel decision that would not convey immunity, while eliminating a position is a "legislative" act for which immunity does attach. Thus, the Court held that the defendants in *Baraka* were entitled to legislative immunity for eliminating the poet laureate position. The Court further explained that "defendants' intent and motive are immaterial to whether certain acts are entitled to legislative immunity." *Id.* at 200.

The same reasoning applies here. The School Board, in enacting its resolution on November 30, 2004, was not making an employment decision regarding a specific employee. Rather, it was setting the terms and conditions for the ***position*** of Real Estate Tax Collector, regardless of who won the November 2005 election. Accordingly, the action was "legislative" in nature and defendants are entitled to immunity. The School Board may have suspected that Schlegel would be reelected to the position, and perhaps even intended to retaliate against him. However, there was no individualized action taken against Schlegel and the board members' motives are immaterial, just as in *Baraka*, it was clear that Defendants eliminated the poet laureate position because they disagreed with his poem. Schlegel was not required to run for reelection, and he did so with full knowledge of the compensation package.

The Plum Borough School District, however, is not entitled to legislative immunity. As

summarized in *Perna v. Township of Montclair*, 2006 WL 2806276 * 4 n.9 (D.N.J. 2006):

> The Court notes that legislative immunity does not apply to municipal bodies such as the Township or the Township Council. *See, e.g., Carver v. Foerster*, 102 F.3d 96, 103 (3d Cir.1996) ("Local governments, unlike individual legislators, should be held liable for the losses they cause."); *McHugh v. Bd. of Educ. of the Milford School District*, 100 F.Supp.2d 231, 238-39 (D.Del.2000) (stating the absolute legislative immunity applied to school board individual members but not to board itself); *Scully v. Borough of Hawthorne*, 58 F.Supp.2d 435, 449 n.14 (D.N.J.1999) ("The immunity from suit that attaches to local and state legislators under Section 1983 is not enjoyed by municipalities or legislative bodies." (citations omitted)).

Accordingly, all of the Individual Defendants are entitled to summary judgment on the basis of legislative immunity and the Court will address the remaining arguments solely as to the School District.

      2.      Defenses by the School District

Defendants argue first that some or all of Plaintiff's claims are barred by the statute of limitations. The Court agrees that conduct which occurred prior to October 13, 2003 is not actionable. However, Plaintiff's challenge to the resolution adopted by the School Board in November 2004 is timely.

Defendants also contend that there was no causal connection between the protected activity and the allegedly retaliatory action. To establish a causal connection, a plaintiff must prove either: (1) an unusually suggestive temporal proximity; or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren*, 480 F.3d at 267. The Court of Appeals has instructed district courts to be diligent in enforcing these causation requirements to avoid chilling public actors from taking appropriate actions for fear of litigation. *Id.* at 267-68.

Defendants argue that there was a clear break in the causal chain. The Court agrees. The

allegedly retaliatory resolution was adopted in November 2004, to take effect in January 2006. In the interim, an election was scheduled. There was no guarantee that Schlegel would win, or that he would even run for reelection. So, clearly, there is no "unusually suggestive temporal proximity." Similarly, there is no evidence in this record by which a reasonably jury could find a pattern of antagonism, coupled with timing, to establish a causal link. It was Schlegel's own decision to run for reelection, knowing the rates established by the Board, that "caused" his alleged damages. The Court cannot accept Schlegel's argument, taken to its logical conclusion, that he had an enforceable right to continue in his elective office at the compensation level enjoyed by his predecessor. Indeed, the Pennsylvania legislature, in 72 P.S. § 5511.36a, specifically authorized school districts to change the compensation for that office.

In summary, the Court concludes that Schlegel cannot satisfy the causation element of a First Amendment Retaliation claim. Accordingly, the School District is entitled to summary judgment.

In accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Document No. 15) is **GRANTED**.

SO ORDERED this 26th day of September, 2007.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Patrick Sorek, Esquire
Email: psorek@leechtishman.com

Alan E. Johnson, Esquire
Email: aejohnson@mdwcg.com
Scott G. Dunlop, Esquire
Email: sgdunlop@mdwcg.com